The issue before the court is whether or not the district court properly denied Mr. Vega's motion to compel withdrawal of counsel on the morning of the trial. What was that motion? Was it a motion to substitute counsel? Was it a motion to appoint new counsel? Was it a motion to represent himself? What was it? Well, Your Honor, I think to some extent I'm clear on exactly what it was. On the other hand, the district court noted that it was to be considered a motion for substitution of counsel. And there was no objection by the defense lawyer at that time that he was misconstruing his motion? That's correct, Your Honor. And as the court is aware of the colloquy and the discussion that goes on regarding this issue is fairly clear. And I think the law is fairly clear. And it's Mr. Vega's position that the court properly considered the proper law, which would be Miller. I've cited the United States v. Miller. The government cited United States v. Smith. Both of those cases lay out this three-pronged or three-factored test for substitution of counsel. And those three factors are, one, the timeliness of the motion. The second one is the nature of the defendant's concern. And the third is the nature of the conflict between the defendants. The timeliness was easy because it was just before trial. At page 11, you concede the inquiry is adequate. So you're relying on the extent of the conflict? That's correct, Your Honor. Now, on page 10 of your brief, you indicate that some of the transcript remained untranslated, but there's no citation to the record. And I couldn't find out what you were talking about, what remained untranslated of the record. I know there was the 50 pages that he promised was going to come later. But is there something else that remained at the end of the day and that was never translated? Well, as I understand it, there were essentially three issues with respect to discovery. First of all, trial counsel indicates that there was this 50 pages of discovery that the court has noted. It's supposed to be there at the end of the day. And the district court said, please let me know when you receive that. Well, there's nothing in the record that ever indicates that he received that. He never made any statements to the district court, so there's no way we can tell from the record whether or not those 50 pages were in fact received. Those 50 pages concerned the confidential informant, and the confidential informant's testimony vis-à-vis the defendant's testimony was the basis for an obstruction of enhancement, and it was also the basis for a motion in limine, so it was fairly important. Well, it may be, but you make the assertion it was untranslated. From what you told me, there's nothing in the record to tell us whether it was or wasn't untranslated. Mr. Trial counsel also indicates that at one point, and I believe that it's page 8 or 9 of the excerpt of record, that Mr. Bagel was transported from the jail to the first day of trial with only the discovery. It would appear that the Spanish translated discovery is still at the jail. Trial counsel also notes, and this is essentially the second point with respect to discovery, quote, all of the Spanish portions that have either been translated or are translated available at this point, end quote, have been provided, which would seem to indicate potentially that there is more discovery to be translated. But why is this all a reason to substitute counsel? I mean, it may be a reason to delay the trial, but why would it be a reason to substitute counsel? Well, our position is, Your Honor, that it demonstrates the conflict between the trial attorney and the defendant. Why is it a conflict? Well, a conflict in the sense that it's breaking down their ability to communicate. I mean, it's the evidence of the problems between the two attorneys, between the defendant and his attorney. The attorney says, I'm not getting all of the translation. The attorney says, I'm getting it as fast as I can. There's nothing in the record to show that he did not do what he said he was trying to do. But from that absence in the record, you're building an argument that there is an irreconcilable conflict between the attorney and the defendant. Yes, with the important caveat that the record does not allow us to explore that, because the trial court never goes on to that third factor under Miller or Smith, and to explore that. It gives us a sense that it's there. The case law, I think, says to the trial court, go through this analysis to see if there's a problem here, and that third step was never done, and so we can't really tell. I thought he did. I thought he said, what about this? The lawyer says, I'm trying to get it. I'm going to have the 50 pages, I hope, by the end of the day, the last 50 pages. Then there's nothing else there in the record. Under the second prong, in terms of the nature of the complaint of the defendant, I think that's true. I think, and this is where I essentially concede this in the brief, I think that the trial court does a fairly good job kind of flushing out this discovery issue. I don't think it was followed through with very well by trial counsel. And so then when you go into the third step, where I think the trial court needed to explore the underlying conflict to determine whether or not the relationship I don't understand your argument. On step two, you've already conceded that in the brief, and step two is the amount of analysis the court has been to. How do you get out of your concession on step two? Well, because there's a number of things that could create such a conflict between Mr. Baker and his trial attorney. And it's my position that that discovery issue is essentially, potentially, we don't know, but potentially a tip of an iceberg. And with that tip of an iceberg, it was incumbent upon the lawyer. So there you're saying it wasn't investigated well enough. Correct. But you conceded that it was investigated well enough. Excuse me, Your Honor? You conceded that it was investigated well enough. Only with respect to discovery. Only with respect to the discovery issue. What other issue was raised before the court? He asked Baker, what's wrong? And he says, I'm not getting the translation. I mean, that's the only thing he raised. Well, I think that under the circumstances. Part of what's wrong here, I think, is that we have a very odd standard. I mean, our standard has timeliness, but it says you have to have an investigation, but it doesn't say investigation of what. And then it has this conflict. The only substantive rule is about a conflict, but presumably there are other substantive reasons why one might approve a substitution counsel, and that's sort of not in the list. And that's sort of, I think, what your problem is here. But still, nothing was articulated other than a discovery problem, and I don't see why a discovery problem is a reason to substitute counsel. Even if we were to start listing out reasons to substitute counsel, why would that be a reason? Well, assuming the trial counsel had met the standard for providing discovery to the defendant, I don't think that it would be. And it was working on it. I mean, wouldn't you have to make some judgment that it was actually going to impede the trial as opposed to the fact that the defendant was moderately upset? I'm not sure I understood the question, Your Honor. If there was actually some possibility that the failure to provide the translations was going to impede the defendant's ability to defend himself, maybe that would be a reason to substitute counsel. But we don't have any reason to think that. Right? Well, it would, again, I'm not based on the record before us. I don't think the record before us is very demonstrative on that point. And I think that the record before us demonstrates that it needs to be investigated further under the third prong of Miller. And that investigation, in my opinion, Your Honor, there's just absolutely nothing on that third prong of Miller in the record. Okay. You've got about one minute left if you want to make rebuttal arguments. Thank you. Thank you, counsel. We'll proceed to the government's argument from Ms. Holtzinger. Good morning, Mr. Court, counsel. My name is Pam Holtzinger on behalf of the United States this morning. I think the record is clear. It's clear that Mr. Vega, in this matter, wanted to delay the trial, and that was his sole reason for raising the discovery issue. The court, in this case, exercised her discretion, that she clearly has, to deny a motion for substitution of counsel on the day of trial. This court has consistently recognized the broad discretion by the district court to deny that substitution motion, especially when it would require a continuance. We cited in our brief United States v. Castro for that proposition. This was Mr. Price, the attorney at trial, was Mr. Vega's fourth attorney. The district court, in this case, had multiple opportunities to observe Mr. Price, the defendant, with his previous lawyers, the reasons for those substitutions, and now, on the morning of trial, his motion with respect to Mr. Price, which I think was clearly not a motion to represent himself. Because? Because I think, under the law in this circuit, in the United States v. Smith, which Judge Berzon, I believe, was on the panel in that case, says that that must be unequivocal. Unequivocal. And it was not unequivocal in this case. And I think the record indicates that he did not want to go to trial. He did not want to plead guilty, and he wasn't sentenced. There is no finding on that. Nor do we need it for our decision. Correct, Your Honor. I believe, I think the record shows that this was Mr. Vega's only attempt to delay the case was to fire his attorney. There was no indication to the court by Mr. Vega or Mr. Price that there was any communication problems between the two of them. In fact, they had met that morning, that I believe Mr. Price indicated to the court. There was no indication of any breakdown in their relationship other than his question about certain discovery material, which he wanted translated. In looking at the test, which we cite United States v. Smith for a three-pronged test, which is at 282 FedDirt 758, the court, as the defendant noted, or the court noted, they did concede to the issue of the court's inquiry. And Judge Brown, given the position she was in to observe months and months of consideration of issues with the defendant, Well, we have no record of any of that. I mean, we know there were three prior attorneys. That's absolutely all we know. We don't know why there was substantive. We don't know. Judge Brown did not rely on any facts other than the fact that this was the fourth lawyer. So it's not particularly helpful. Well, I think in looking at the excerpt of a record in the document of the case shows the activity that had occurred. No, I understand that there were four lawyers, but I don't know anything about why or anything like that. Well, I think her assessment of this discovery issue as it related to Mr. Price was that it wasn't about Mr. Price. I mean, it was about him wanting to delay the trial. When the issue first came up for the court, was Mr. Price advising the court initially that this client wanted to dismiss him? The judge inquired as to Mr. Vega, and that's when he brought up the discovery issue. The judge then went to Mr. Price who explained that he had reviewed all the discovery material with the defendant. It had been read to him in Spanish, and the material that had not yet been translated had also been read to him. So that was her inquiry as to his counsel as to the issue. When the judge inquired then with Mr. Vega, is there anything else? He said, no, that's all. At that point, neither of them again raised the issue of communication between the two, that they had irreconcilable conflict. The court obviously already noted that the morning of trial motion by the defendant was not timely, and the defendant argues that the court should have inquired more about the delay. And I would, I think, cite again the fact that this was his fourth counsel. We were on the eve of trial. Why do you need to even cite anything? There's a concession in this brief. Well, I think he concedes that the inquiry was appropriate, but he does not concede that he argues that the court made an inaccurate record of the timeliness of the defendant's request and did not inquire as to the delay with the defendant. And I think the court's inquiry at that point did not need to discuss an exhaustive inquiry as to delay based on the fact that it was his fourth successive court-appointed attorney, which he was asking for now a fifth on the morning of trial. He failed to provide any justification for asking for a fifth attorney, other than this issue of the translated discovery, which Mr. Price had sufficiently discussed with the court as to what the translation in the papers. The court specifically noted that the government, the court, and the defense counsel had gone to extraordinary efforts to make sure Mr. Vega had received all the information necessary in the case. She found that the defendant had received adequate discovery, and that's at Exeter Record 8, where she discussed the extraordinary efforts of defense counsel at Exeter Record Page 21. I would also point out that I think the defendant's reliance on two cases, U.S. v. Moore and Brown v. Craven, are both, I think the reliance on those two cases is misplaced. Those cases factually are far different from the facts of the record before this court. In Moore, that record established a complete breakdown in the attorney-client relationship. The defendant in that case threatened his attorney. He brought up, at least three occasions, specific, explicit, specific complaints about his attorney. And even the attorney told the court he thought he should be removed. There were threats. There was name-calling. And the Ninth Circuit appropriately held that that was an irreconcilable conflict and a breakdown in the attorney-client relationship. That's not what happened with Mr. Vega and his attorney. In Brown, that case, again, the court found there to be an irreconcilable conflict. In that case, the defendant made four motions for substitution of counsel prior to trial, all of which were summarily denied by the state court. No adequate inquiry was conducted into those motions. And the defendant in that case would not cooperate nor communicate with his attorney. That, again, very different facts than Mr. Vega and his relationship with Mr. Price. We, the United States, would argue that U.S. v. Smith, which I had mentioned previously, and United States v. Corona-Garcia are more closer factually to the facts of this case. Both of those cases, first of all, with respect to U.S. v. Smith, the defendant in that case timely sought a second substitution of counsel. And the court inquired as to the reasons that it had to do with the discovery issue, strategy issue. And the court found that dispute between the attorney and his client in that case was not irreconcilable. And it was a second request for an attorney that appeared to be to delay the proceedings. In Corona-Garcia, again, it was a disagreement with the lawyer about discovery or trial strategy issue. He claimed, the defendant in that case claimed he wasn't receiving the appropriate paperwork but couldn't specifically say which papers he was missing. And the court in that case found that the attorney and the client were still communicating with each other. In that case, as well, the motion was made that the trial was imminent. And the court stated in Corona-Garcia that when late notice and a motion are combined with an unpersuasive miracle argument, the case for delay is weak. And in this case, factually... Does the client actually make a finding on prompt three, i.e., the conflict issue? Does she make a finding on a particular issue? I don't think she said the words. I think when she said, I find that there's no discovery issues, and I think those are the exact words for it, she found that the defendant had received adequate disclosure of discovery in English and Spanish, and that's an extra record eight. But she was addressing that issue of the conflict because the only conflict was this paperwork discovery. So I think that's as close to... Which is setting aside and putting to rest the issue of whether Mr. Vega has properly received the paperwork. Your time's almost at a close, so please wrap up. Thank you, Your Honor. I would just say in closing that I think that the record of the case and the law cited in the government's brief, the court indicated that the district court in this case did not use her discretion in denying the defendant's motion. Okay, thank you, counsel. The case is submitted. I'm sorry, we said you could have... You reserved a minute for rebuttal. I apologize. Please proceed. Two quick points, I guess. First would be, I need to look at the record here, but I believe the first attorney was removed due to a conflict with the Federal Public Defender's Office. I believe either the second or third attorney asked to withdraw for health reasons. And so this kind of fourth attorney argument, I think, in terms of this kind of superficial analysis of it isn't quite as powerful. The other thing I was going to say is, in Moore, the court noted under the section titled Adequacy of Inquiry in the opinion that the district court did not do enough to, quote, understand the extent of the breakdown, end quote. And I think that's what happened here, and therefore I think the motion should have been granted. Thank you. Thank you, counsel. Okay. The Ramirez case is submitted on the briefs. And so we turn to United States v. Thrasher. And for appellate we have Mr. Olson. For the governor, Mr. Sussman.
judges: Wallace, Gould, Berzon